IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOHN A. TURNER,
        Petitioner,

vs.                                                  Case No.:  4:11cv488/WS/EMT

MICHAEL D. CREWS,
        Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 24, 25).  Petitioner filed a reply (doc. 29).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* docs. 24, 25).[1]  Petitioner was indicted in the Circuit Court in and for Leon County, Florida, Case No. 2005-CF-2005, on one count of first degree premeditated murder (Ex. A at 1–2).

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (docs. 24, 25).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Following a jury trial, he was found guilty as charged (Ex. A at 126–27, Exs. C, D, E, F, G, H). On June 19, 2008, Petitioner was sentenced to life imprisonment without the possibility of parole, with pre-sentence jail credit of 450 days (Ex. A at 128–36, Ex. H at 516–18).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D08-3453 (Ex. J). The First DCA affirmed the judgment per curiam without written opinion on June 8, 2010, with the mandate issuing August 30, 2010 (Exs. M, P). Turner v. State, 41 So. 3d 900 (Fla. 1st DCA 2010) (Table). Petitioner did not seek further review.

On March 1, 2011, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D11-1283, alleging ineffective assistance of appellate counsel (Ex. Q). The First DCA denied the petition on March 30, 2011, and denied Petitioner's motion for rehearing on May 5, 2011 (Exs. R, S, T). Turner v. State, 60 So. 3d 1084 (Fla. 1st DCA 2011) (Mem).

On April 22, 2011, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. U at 1–16). In an order rendered January 20, 2012, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within thirty days (id. at 17–18). Petitioner filed an amended motion on February 3, 2012 (id. at 19–31). The state circuit court summarily denied it on April 27, 2012 (id. at 32–36). Petitioner appealed the decision to the First DCA, Case No. 1D12-2614 (Ex. V at 317, Ex. W). The First DCA affirmed the judgment per curiam without written opinion on February 11, 2013, with the mandate issuing March 11, 2013. Turner v. State, 108 So. 3d 1086 (Fla. 1st DCA 2013) (Table). Petitioner filed a petition for review in the Supreme Court of Florida, Case No. SC13-441, but the court dismissed the petition for lack of jurisdiction on April 9, 2013. Turner v. State, 115 So. 3d 1003 (Fla. 2013) (Table).

Petitioner filed the instant federal habeas action on August 28, 2011 (doc. 1 at 6).

II.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant

part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court proceedings unless the adjudication
> of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as determined
> > by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the State court
> > proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v.

Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was

described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue
> only if one of the following two conditions is satisfied—the state court adjudication
> resulted in a decision that (1) "was contrary to . . . clearly established Federal law,
> as determined by the Supreme Court of the United States," or (2) "involved an
> unreasonable application of . . . clearly established Federal law, as determined by the
> Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas
> court may grant the writ if the state court arrives at a conclusion opposite to that
> reached by this court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the writ if the
> state court identifies the correct governing legal principle from this Court's decisions
> but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct.

2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for
the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion
(529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas,
and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was
joined by Justices Souter, Ginsburg, and Breyer.

that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.*

Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
       (ii)  circumstances exist that render such process ineffective to protect the rights of the

State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court

---

applicant.

. . . .

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:]  'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v.

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

*See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence.  *See* McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."  513 U.S. at 332; *see also* House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

Ground One:  "Whether the trial court erred in allowing the State's key witness to testify via satellite feed violated [sic] the Petitioner's right of confrontation."

Petitioner contends the trial court violated his right to confront adverse witnesses, guaranteed by the Confrontation Clause of the Sixth Amendment, by permitting a witness to testify via satellite (doc. 1 at 4).  Petitioner asserts he raised this claim on direct appeal of his conviction, and he

incorporates the arguments set forth in his state appellate brief, a copy of which he submitted with his federal petition (doc. 1 at 4, attached Amended Initial Brief of Appellant).

Respondent contends the state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law (doc. 24 at 32–36).

1.  Clearly Established Federal Law

The Sixth Amendment's Confrontation Clause provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.  The Supreme Court has "never held, however, that the Confrontation Clause guarantees criminal defendants the absolute right to a face-to-face meeting with witnesses against them at trial." Maryland v. Craig, 497 U.S. 836, 844, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990) (holding that one-way closed-circuit television testimony by a child witness in an abuse case may be consonant with the Confrontation Clause).  Instead, "the Confrontation Clause reflects a preference for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case."  497 U.S. at 849 (internal quotations and citations omitted).  "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and where the reliability of the testimony is otherwise assured." Id. at 850.  The trial court generally must:  (1) hold an evidentiary hearing; and (2) find: (a) that the denial of physical, face-to-face confrontation at trial is necessary to further an important public policy, and (b) that the reliability of the testimony is otherwise assured.  Id. at 850, 855.  The first part of this test requires that the trial court find that it is essential to deny the defendant his right to face-to-face physical confrontation in order to serve the interest the government asserts. See id. at 855 (stating that, in order to separate the witness and defendant, the problem must be the physical presence of the defendant during the witness's testimony, not some other problem that could be remedied by a less intrusive solution). The requisite finding of necessity is a case-specific one. See id.  "The combined effect of [the] elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable . . . ." Id. at 846.

2.  Federal Review of State Court Decision

The state court record demonstrates that seven months prior to Petitioner's trial, the State filed a stipulated motion to perpetuate the testimony of Dwyone "Dewayne" Dugan (Ex. A at 75–76).  The motion represented that defense counsel did not oppose the motion, and that Petitioner waived his right to be present at Mr. Dugan's deposition, which was to be conducted at a federal penitentiary in the State of Illinois (*id.*).  On December 4, 2007, the trial court granted the stipulated motion and ruled that, pursuant to the parties' agreement, the video tape of Mr. Dugan's deposition would be admissible at trial in lieu of live testimony (*id.* at 77).  On the day of trial, however, the prosecutor indicated that Mr. Dugan would be testifying via video conferencing and, further, that she understood the defense had no objection to such testimony (Ex. D at 7).  Petitioner's counsel responded by stating that he personally had no objection, that he believed such testimony was appropriate under the circumstances, and that he had recommended to Petitioner that Mr. Dugan testify in this manner (*see id.* at 7–10).  When the court asked Petitioner if he had any objection to Mr. Dugan testifying via video conferencing, Petitioner stated that he did, and he insisted that Mr. Dugan testify in person (*id.* at 10–13).  The court then held an evidentiary hearing on the issue of Mr. Dugan's testifying via two-way video, during which the following testimony was adduced:

> MS. CAPPLEMAN [the prosecutor]: My understanding of Mr. Dugans' [sic] medical situation is he is currently being housed in a Federal medical prison in Springfield Missouri.  He does currently weigh approximately 780 pounds.  He testified at deposition to my recollection that he did not have any medical problems other than obesity and high blood pressure.  However, Mr. Taylor [defense counsel] and I did have an opportunity to observe him there.  He is huge and in a special wheelchair as Mr. Taylor mentioned previously.
>
> His doctors at the prison advised my office that he did have medical problems that would prevent him from being transported.  I don't know if that's true or not.  Mr. Dugan denies that, so I'm really unaware of exactly what his medical situation is.  But when we went up there to perpetuate his testimony, we were under the impression that he was medically unfit to be transported.  And that was persaunt [sic] to his doctors' representations there at the prison.
>
> In addition, we looked into transporting him via life-light [sic] helicopter, which I'm told is the only way that he could be transported to accommodate his health needs as well as his size.  And the charge to the State for that was going to be in excess of $24,000.

In addition, once we got him here in the helicopter, we had no way to secure him because he wouldn't fit into the courthouse. He wouldn't fit into the holding cell. Physically, we didn't have a way to get him into this courtroom to appear live. He's simply too large.

THE COURT: Okay. And Mr. Taylor mentioned something about a custom wheelchair.

MS. CAPPLEMAN: He was in a custom wheelchair when we saw him at the prison. I can't estimate how wide it is other than maybe this podium, maybe between five and six plus feet wide, and he hangs over the side of that. I anticipate he would probably be virtually immobile. We did see him stand up once, but it looked pretty labored, so I don't think he can walk on his own.

THE COURT: Okay. And can you tell me a little bit about why his testimony is necessary?

MS. CAPPLEMAN: Mr. Dugans' [sic] testimony is crucial in the case, as he is the witness who identified the defendant originally as being involved in this murder. It would be his testimony that the defendant came to his home after the murder covered in blood and made some admissions about the crime. At a later time there was additional conversation between Mr. Dugan and the defendant about the murder where the defendant made some additional admissions.

Mr. Dugan was the person who broke the case for the police and was the first person who pointed the finger at Mr. Turner, which basically re-opened a cold case after eight years.

THE COURT: Okay. And the Yates case [United States v. Yates, 438 F.3d 1307 (11th Cir. 2006)] also talks about the reliability of the testimony otherwise being assured. Can you tell me—

MS. CAPPLEMAN: The testimony of mr. [sic] Dugan, at least in part, was corroborated by his wife who was present also when Mr. Turner arrived at their home on the night of the murder, can corroborate Mr. Turner's demeanor and appearance. In addition, there was DNA found at the crime scene that was unknown before Mr. Dugan came forward, but since Mr. Dugan identified Mr. Turner as a suspect that DNA was found to be a match to Mr. Turner. So that further corroborates Mr. Dugans' [sic] statements, as well as Mr. Turner's own statements to the police.

THE COURT: Okay. And both you and Mr. Taylor traveled out to Missouri and took Mr. Dugan deposition; right?

MS. CAPPLEMAN: That's correct. We went with the intent of deposing him, and then following up with a perpetuated testimony, which is what we did.

THE COURT: Okay. And then finally, could you talk a little bit about what you understand the two-way video is going to be like that you proposed to use.

MS. CAPPLEMAN: It is a satellite link with a live feed. So it would appear in realtime. We would see Mr. Dugan as he appears in Missouri and he would be able to see us.

THE COURT: Okay. And I believe the camera in the courtroom can be moved so he could look at jury [sic] as well as the defendant and the lawyers?

MS. CAPPLEMAN: Correct.
. . . .
MR. TAYLOR [defense counsel]: Just for the record, Ms. Cappleman, you indicated that Mr. Dugan was the first person to come forward and basically point the finger at the defendant; is that correct?

MS. CAPPLEMAN: That was my testimony.

MR. TAYLOR: And it was in 2004.

MS. CAPPLEMAN: That's right.

MR. TAYLOR: That's all I have got, Judge.

(Ex. D at 14–18). Defense counsel then added that Mr. Dugan "can probably get through with great difficulty some of these [courtroom] doors because he can leave his wheelchair briefly" (*id.* at 19). Defense counsel also opined, "There are housing facilities. The Federal Detention Center could probably handle him. I haven't looked into that." (*id.* at 20).

The trial court made the following ruling:

THE COURT: Okay. I think this situation, clearly meets the consideration in <u>Harrel</u> [sic] [<u>Harrell v. Butterworth</u>, 251 F.3d 926 (11th Cir. 2001)] as well as <u>Yates</u>. The witness clearly resides be [sic] beyond—potentially resides beyond the territorial jurisdiction. But more importantly, is unable to attend. It would be impossible, or virtually impossible and very costly to get him here due to his size and his health condition. And the testimony is also material and necessary to prevent a failure of justice and those are the two prongs under the <u>Harrel</u> [sic] case.

> Of course, he will be placed under oath. Mr. Taylor will have the opportunity to cross examine him. Not only that, but Mr. Taylor has already seen him in person and has that extra benefit of being able to cross-examine him and question him in person when you all went to Missouri for the depo. And of course, the depo to perpetrate testimony, that had already been approved under the similar procedure spelled out in <u>Harrel</u> [sic]. And then also under the <u>Yates</u> case, which is really a similar test to <u>Harrel</u> [sic].

> I have gone ahead and held an evidentiary hearing this morning. And Mr. Turner will have the opportunity to confront Mr. Dugan. It won't be face-to-face confrontation, but it will be via two-way satellite where Mr. Turner can see Mr. Turner and Mr. Dugan can see Mr. Turner. And Mr. Dugan will also be able to see the lawyers and the jury.

> His testimony, I believe, is necessary to further an important public policy in this. And I'm going to find that the State has presented evidence that his testimony is both crucial and reliable. So I'm going to allow Mr. Dugan to testify . . . .

(Ex. D at 21–22). Defense counsel moved that the transcripts of Mr. Dugan's two depositions (one taken before the court granted the stipulated motion to perpetuate testimony and one taken after the court granted the motion) be made part of the record, and the court granted the motion (*id.* at 22–23).

During Mr. Dugan's trial testimony, defense counsel objected to the video transmission and moved for a mistrial, on the ground that the satellite feed did not constitute a "live feed," due to delays in the feed, as contemplated by the case law permitting video testimony, and the delays in the feed prevented the jury from evaluating Mr. Dugan's demeanor (Ex. at 167–69). Defense counsel argued that at least half of Mr. Dugan's words did not appear to be coming out of his mouth, and the video image was "jerking around" (*id.*). Defense counsel admitted that there was no problem with the audio, but argued that the breaks and delays in the video made it impossible to visually determine Mr. Dugan's demeanor (*id.* at 169). The trial court overruled the objection and denied the motion for mistrial on the ground that the jury could hear all of Mr. Dugan's testimony, and despite the 1–2 second delay in the video, which caused a "slight jerk" in Mr. Dugan's movements, the jury was "able to observe him sitting there and moving around, and what everyone would normally talk about as his demeanor" (*id.*).

On direct appeal, Petitioner's appellate counsel fairly presented as issue I the federal Confrontation Clause claim that Petitioner presents in Ground One of his § 2254 petition (Ex. J at

16–22).  Counsel argued that although the trial court held an evidentiary hearing and found that the denial of physical, face-to-face confrontation at trial was necessary to further an important public policy, the second prong of the <u>Craig</u> test (that the reliability of the testimony is otherwise assured) was not satisfied, because neither Petitioner nor the jury had a fair opportunity to accurately observe Mr. Dugan and properly weigh his credibility, because of the inadequate video quality (*id.*).  Counsel argued that during Mr. Dugan's testimony, the frame rate of the satellite feed lagged so much that the transmission did not appear to be "live" (*id.*).  The First DCA affirmed the judgment of conviction without written opinion (Ex. M).

The only published Eleventh Circuit case reviewing, through the AEDPA's deferential lens, a state court's application of <u>Craig</u> is <u>Harrell v. Butterworth</u>, 251 F.3d 926 (11th Cir. 2001), *cert. denied* 122 S. Ct. 1367 (2002).  In <u>Harrell</u>, the petitioner argued that the trial court's admission of testimony via satellite transmission from two witnesses in Argentina violated his Sixth Amendment Confrontation Clause rights.  251 F.3d at 929.  Harrell argued that because there were technical difficulties with the satellite testimony, he was denied the opportunity to fully cross-examine the witnesses, and the jury was unable to determine the witnesses' credibility and demeanor.  *Id.* at 930. The technical difficulties consisted of a one-second delay in the synchronization of the audio and visual transmissions, two instances in which the end of a question was cut off, and a momentary loss of picture in Argentina.  *Id.*

The Florida Supreme Court, applying <u>Craig</u>, concluded that although the satellite procedure was not the equivalent of face-to-face confrontation, the procedure qualified as an exception to the Confrontation Clause.  251 F.3d at 929 (citation to state court case omitted).  The state court began by recognizing public policy reasons justifying an exception to face-to-face confrontation.  First, the witnesses lived beyond the subpoena power of the court and thus there was no way to compel them to appear in court.  The state court found this to be an important consideration, because it was "clearly in [the] state's interest to expeditiously and justly resolve criminal matters that are pending in the state court system."  *Id.* (internal quotation marks and citation to state court case omitted).  Second, there was evidence that one of the witnesses was in poor health and could not travel to this country.  *Id.* (citation to state court case omitted).  Finally, the testimony of the two witnesses was "absolutely essential to this case."  *Id.* (internal quotation marks and citation to state court case omitted).  The state

court concluded that "[t]hese three concerns, taken together, amount to the type of public policy considerations that justify an exception to the Confrontation Clause." *Id.* (internal quotation marks and citation to state court case omitted).   Next, the state court concluded that the satellite procedure "satisfied the additional safeguards of the Confrontation Clause—oath, cross-examination, and observation of the witness's demeanor"—because the witnesses were placed under oath by a court clerk in Miami, the defendant had an opportunity to cross-examine the witnesses, the jury was able to observe the witnesses as they testified, and the witnesses could see the jury.  *Id.* (internal quotation marks and citation to state court case omitted).

 In reviewing the Florida Supreme Court's application of <u>Craig</u>, the Eleventh Circuit initially noted that it was bound by the state court's factual determination that, despite technical difficulties during the testimony, the jurors were able to evaluate the credibility and demeanor of the witnesses. <u>Harrell</u>, 251 F.3d at 930.  The Eleventh Circuit went on to conclude:

>  The Florida Supreme Court's decision was neither contrary to, nor an unreasonable application of, Supreme Court law as set forth in <u>Craig</u>.  The Florida Supreme Court concluded that public policy considerations justified an exception to face-to-face confrontation and, thus, that the first prong of the <u>Craig</u> analysis was satisfied.  *See* <u>Harrell</u>, 709 So. 2d at 1369.  In support of this conclusion, the Florida Supreme Court noted that:  the witnesses lived beyond the subpoena power of the court and thus there was no way to compel them to appear; it is in the state's interest "to expeditiously and justly resolve criminal matters that are pending in the state court system;" one of the witnesses was in poor health and could not travel from Argentina to the United States; and the two witnesses were "absolutely essential" to the case. *Id*. at 1369–70.
>
>  The Florida Supreme Court also concluded that the reliability prong of the <u>Craig</u> analysis was satisfied.  *See* <u>Harrell</u>, 709 So.2d at 1371.  The Court noted that both witnesses were placed under oath by a court clerk in Miami; Harrell had an opportunity to cross-examine the witnesses; the jury could observe the witnesses as they testified; and the witnesses could see the jury.

<u>Harrell</u>, 251 F.3d at 931.

 Because defense counsel and the trial court also discussed the Eleventh Circuit's decision in <u>United States v. Yates</u>, 438 F.3d 1307 (11th Cir. 2006), the undersigned will discuss it here.  <u>Yates</u> was a direct appeal of a federal conviction.  During trial, the district court did not hold a hearing to consider evidence of the necessity for the video testimony, and instead allowed the video testimony

of witnesses located in Australia based only on the Government's assertions in a pre-trial motion that the witnesses were unwilling to travel to the United States for trial, and it served "'important public polic[ies] of providing the fact-finder with crucial evidence,' [ ] 'expeditiously and justly resolving the case,' [ ] and 'ensuring that foreign witnesses can so testify.'" *Id.* at 1315–16 (internal citations to record omitted).  The Eleventh Circuit held that under the circumstances of the case, including the lack of case-specific findings of fact that would support a conclusion that the case was different from any other prosecution in which the Government would find it convenient to present testimony by video, and the fact that the Government did not did not contend that any special circumstances prevented it from using the available alternative of perpetuating the testimony by deposition, which the defendants would have been allowed to attend, there was not a sufficient showing of necessity to outweigh the defendants' rights to confront their accusers face-to-face.  *Id.* at 1315–18.

In the instant case, like Harrell and unlike Yates, the court is required to apply the AEDPA's deferential standard of review.  Also, unlike Yates, the trial court in the instant case held an evidentiary hearing on the issue and made a case-specific finding of necessity based not only on the public policy considerations of providing the jury with crucial evidence and justly resolving the case, but also on the special circumstances of Mr. Dugan's size and health condition, which rendered it "virtually impossible" and very costly for him to personally appear at trial.  Also unlike Yates, the State in the instant case used the available alternative of perpetuating Mr. Dugan's testimony by deposition in Missouri, which defense counsel attended (as previously noted, Petitioner's appearance at the deposition was waived).  Moreover, with regard to the reliability prong of the Craig test, the record demonstrates that Mr. Dugan was placed under oath, and defense counsel had an opportunity to cross-examine him (Ex. E at 164–92).  Further, this federal court is bound by the state court's factual determination that, despite technical difficulties during Mr. Dugan's testimony, the jurors were able to hear his testimony and evaluate his demeanor.  *See* Harrell, 251 F.3d at 930–31.  Petitioner has not rebutted the presumption that this factual determination is correct.  Therefore, the reliability safeguards were satisfied.

Petitioner failed to demonstrate that the state court's adjudication of the merits of his Confrontation Clause claim was based upon an unreasonable determination of the facts, or was

contrary to or an unreasonable application of clearly established federal law.  Therefore, he is not entitled to habeas relief on Ground One.

      B.      <u>Ground Two:  "Whether the trial court erred in allowing the State's key witness to state [that] the Petitioner told him 'I did it again' six or more times."</u>

Petitioner asserts the State's key witness, Mr. Dugan, was specifically directed not to mention any of Petitioner's prior bad acts, yet despite this directive, Mr. Dugan testified that Petitioner told him, "I did it again" (doc. 1 at 4).  Petitioner argues the trial court erred in denying defense counsel's motion for mistrial based upon Dugan's reference to Petitioner's prior conduct (*see* doc. 29 at 1).  Petitioner asserts he raised this claim on direct appeal of his conviction, and he incorporates the arguments set forth in the copy of his state appellate  brief attached to his § 2254 petition (doc. 1 at 4, attached Amended Initial Brief of Appellant).

Respondent contends this claim is not exhausted because Petitioner did not argue in state court—and does not argue here—that the trial court deprived him of a federal constitutional right (doc. 24 at 36–38).  Respondent asserts Petitioner's appellate counsel argued in state court that the trial court erred in denying the defense's motion for mistrial, on the ground that Mr. Dugan's testimony was improper collateral crime evidence and/or improper character evidence, and counsel relied solely on Florida evidentiary law in support of his argument (*id.* at 36–37).  Respondent contends notwithstanding the failure to exhaust, Petitioner's claim is without merit (*id.* at 37–38).

In Petitioner's reply, he argues the procedural default was caused by ineffective assistance of appellate counsel, based upon counsel's failure to present the issue as a federal claim (doc. 29).

The state court record confirms that Petitioner's initial brief on direct appeal of his conviction did not fairly present a federal claim with regard to the claim asserted here in Ground Two (*see* doc 1, attached state appellate brief; *see also* Ex. J at 23–25).  Although in issue II of the appellate brief Petitioner's counsel argued error with respect to the trial court's denial of the motion for mistrial after allowing Mr. Dugan to testify that Petitioner told him, "I did it again," counsel argued solely state law as the basis for his argument (*see* Ex. Q at 23–25).  Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claims would be procedurally barred under Florida law. *See* <u>Rodriquez v. State</u>, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); <u>Smith v. State</u>, 445 So.

2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").

As discussed *supra*, to overcome a procedural default such that this court may consider the merits of his claims, Petitioner must show cause for the default and prejudice resulting therefrom, or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  Although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent claim in the state courts, and exhausted therein.  Murray, 477 U.S. at 488; Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989).

Here, the procedural default occurred in Petitioner's direct appeal.  In Florida, a claim of ineffective assistance of appellate counsel is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken.  *See* Fla. R. App. P. 9.141(d).  Petitioner filed a state habeas petition alleging ineffective assistance of appellate counsel in the First DCA (*see* doc. 1, attached state habeas petition; *see also* Ex. Q).  However, he did not argue that appellate counsel was ineffective for failing to present a federal claim with regard to the trial court's denial of the motion for mistrial based upon Mr. Dugan's testimony that Petitioner stated, "I did it again" (*see id.*). Instead, Petitioner argued only that appellate counsel was ineffective with respect to his argument concerning an erroneous jury instruction, raised as issue III on direct appeal (*see* doc. 1, attached state habeas petition; *see also* Ex. Q at 4).  Because Petitioner did not exhaust a claim of ineffective assistance of appellate counsel with regard to counsel's failure to present Ground Two as a federal claim on direct appeal, Petitioner is not entitled to federal review of his claim through the "cause and prejudice" exception.  Further, he has not demonstrated he is entitled to federal review through any other recognized exception to the procedural bar.  Therefore, Petitioner is not entitled to federal review of Ground Two.

C.     Ground Three: "Where [sic] the trial court erred by instructing the jury manslaughter by act required an intent to cause death."

Petitioner alleges the trial court instructed the jury on second degree murder and manslaughter by act as lesser included offenses to the charge of first degree premeditated murder (doc. 1 at 5).  He alleges the court erroneously instructed the jury that to prove the crime of manslaughter by an

intentional act, the State must prove the following two elements:  (1) Leslie Harris is dead, and (2) John Allen Turner intentionally caused the death of Leslie Harris (*id.*).  Petitioner asserts he raised this claim on direct appeal, and he incorporates the argument included in his state court brief (doc. 1 at 5, attached Amended Initial Brief of Appellant).

Respondent contends Petitioner's claim is not cognizable, because the claim is purely a state law issue (doc. 24 at 38).  Further, Petitioner did not present a federal claim to the state court on direct appeal; instead, the issue was argued on purely state law grounds (*id.* at 38–39).  Therefore, Ground Three is unexhausted and procedurally defaulted (*id.*).  Respondent contends notwithstanding the failure to exhaust, Petitioner's claim is without merit (*id.* at 39–40).

Petitioner does not argue in Ground Three that the jury instruction on manslaughter violated the Constitution or federal law.  Further, the argument that he incorporates from his initial brief on direct appeal of his conviction does not claim constitutional error; the claim is merely that the manslaughter instruction was incorrect under Florida law, because it improperly imposed an additional element (*see* doc. 1, attached state appellate brief; *see also* Ex. J at 25–27).  In general, questions of state law rarely raise issues of federal constitutional significance and, therefore, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); *see also* Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000) (stating that the writ of habeas corpus was not enacted to enforce state-created rights).  Where the claim is merely that a jury instruction was incorrect under state law, federal habeas relief is not available.  Estelle v. McGuire, 502 U.S. 62, 71–72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

Further, Petitioner's brief to the state appellate court did not refer to a federal constitutional issue or federal law, and neither of the two Florida cases cited in his appellate brief discussed the United States Constitution (*see* Ex. J at 25–27).  Therefore, Petitioner did not fairly present a federal claim to the state courts.  Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claims would be procedurally barred under Florida law.  *See* Rodriquez, 919 So. 2d at 1262 n.7; Smith, 445 So. 2d at 325.

Finally, Petitioner failed to show cause for his failure to present the state court with a federal claim regarding the manslaughter instruction.  As previously discussed, Petitioner presented the state

courts with a claim of ineffective assistance of appellate counsel with regard to counsel's presentation of issue III, the manslaughter jury instruction issue; however, Petitioner argued that counsel's deficiency was his failure to alert the First DCA to the Florida Supreme Court's decision in State v. Montgomery, 39 So. 3d 252 (Fla. 2010), which was decided after briefing and before the First DCA decided Petitioner's direct appeal (see doc. 1, attached state habeas petition; see also Ex. Q at 4).[7] Petitioner did not argue that appellate counsel was ineffective by failing to present the jury instruction issue as a federal claim, and thus did not exhaust such an ineffective assistance of appellate counsel claim.   Therefore, Petitioner cannot rely on any alleged error of appellate counsel as cause for procedurally defaulting a federal claim with regard to the manslaughter instruction.  Petitioner has not demonstrated he is entitled to federal review through any other recognized exception to the procedural bar.  Therefore, Petitioner is not entitled to federal review of Ground Three.

V.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

---

[7] The state court record demonstrates that Petitioner's appellate counsel did, in fact, alert the First DCA to the Florida Supreme Court's decision (see Ex. L).

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 22ⁿᵈ day of April 2014.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**